## MORITZ KAUFMAN

*v.*

### THE PEOPLE *ex rel.* Henry Bonnefoi.

*Opinion filed April 17, 1900.*

185   113
s85a  421

1. JUSTICES OF THE PEACE—*Governor cannot change successorship designated by judges of Cook county.* The power of judges of Cook county to recommend a person for justice of the peace includes the designation of the particular person whom he is to succeed, and the Governor must either appoint or reject as recommended, and cannot appoint a person recommended but change his successorship. (*People* v. *O'Toole*, 164 Ill. 344, followed.)

2. SAME—*when judges' recommendation does not amount to a double designation of successorship.* A recommendation by the judges of Cook county to the Governor that a certain person be appointed to succeed himself as justice of the peace but to hold the office which was held by another justice of the peace four years before is not a double designation of successorship, where the latter justice has held over without appointment, being the person designated in the judges' recommendation four years previous to be succeeded by the former, who was duly appointed as a justice of the peace but whose successorship as recommended was changed by the Governor.

*Kaufman* v. *People*, 85 Ill. App. 421, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

185—8

.The State's attorney of Cook county filed in the superior court an information in the nature of a *quo warranto*, in substance as follows:

"Said State's attorney, for and on behalf of the People, upon the relation of Henry Bonnefoi, comes into court and gives the court to understand and be informed that said Moritz Kaufman unlawfully held, at the time of the filing of this information, and executes, without any warrant or right whatsoever, the office of justice of the peace for the town of Lake View, in Cook county; that he has usurped, and still usurps, the rights and duties of said office, to the prejudice of the People, etc.; that on June 13, 1891, said Kaufman was duly commissioned justice of the peace for the town of Lake View by the Hon. Joseph W. Fifer, Governor of the State of Illinois, to have and hold the office until his successor shall be appointed and qualified to office; that it was duly entered of record in the county clerk's office on the 16th day of June, 1891, by Henry Wolff, county clerk of Cook county; that prior to the execution of said commission and the delivery thereof to the said Kaufman, he, together with John A. Mahoney, C. J. Whitney, Henry J. Sampson and Vincent S. Boggs, were recommended as such justices of the peace by a majority of the judges of Cook county to the then Governor of the State of Illinois, and that the names of the said aforementioned parties were recommended by the Governor for confirmation by the Senate of Illinois; that said names were confirmed by said Senate as such justices of the peace for the town of Lake View; that by said recommendation, nomination and confirmation said Moritz Kaufman, and the other parties named, became justices of the peace for the said town; that said Moritz Kaufman and the said other parties, respectively, took the oath of office as such justices of the peace, and in all things complied with the laws of the State of Illinois requisite to the holding of said office, and the said Kaufman has acted as justice of the peace, and continues so

to act, notwithstanding the matter and things herein-
after set forth; that since the 13th day of June, 1891,
said Kaufman has not been nominated by a majority of
the judges of the circuit, superior, county and probate
courts of Cook county to the office of justice of the peace,
nor has he since said date been nominated by the Gov-
ernor or confirmed by the Senate of the State of Illinois;
that he unlawfully continues to hold the office, and claims
as his warrant to do so that no successor has been duly
and legally appointed or has duly qualified to the office
so held by him by virtue of his commission dated June
13, 1891.

"It is further shown to the court, that on the 19th of
April, 1895, a majority of the judges of the aforementioned
courts recommended to Governor Altgeld, of the State
of Illinois, the names of five persons for the respective
offices of justice of the peace for the town of Lake View,
aforesaid, as follows: Henry Bonnefoi to succeed Moritz
Kaufman; Mibra James to succeed Henry J. Sampson;
Niles E. Olson to succeed Vincent S. L. Boggs; John A.
Mahoney to succeed himself, and C. J. Whitney to suc-
ceed himself; that the names of said persons so recom-
mended to said Governor were so named and transferred
to the said Governor in a written communication signed
by the aforesaid judges; that subsequently thereto said
Governor nominated three persons from the list so rec-
ommended to him by said judges, and the names of said
three persons so nominated are as follows: John A. Ma-
honey to succeed himself; Henry B. Bonnefoi to succeed
Henry J. Sampson; Niles E. Olson to succeed C. J. Whit-
ney; that the names of the persons so nominated were
sent in a written communication addressed to the Senate;
that subsequently to the transmission of said names by
said Governor to the said Senate, the secretary of said
Senate notified the secretary of the State of Illinois that
the Senate had confirmed the nominations made by the
Governor; that subsequently said Bonnefoi took the oath

of office and received a commission from said Governor Altgeld, and in all things complied with the law of the State of Illinois in that behalf; that said commission was duly recorded in the office of the county clerk of Cook county; that said Henry Bonnefoi immediately entered upon the duties of said office by virtue of his commission; that subsequently, on the 8th of April, 1899, a majority of the judges of said superior, circuit, county and probate courts of the county of Cook recommended and cer- tified to the Governor of the State of Illinois the name of Henry Bonnefoi as justice of the peace of said town of Lake View, and that said judges then and there recom- mended said Henry Bonnefoi *to succeed himself as justice of the peace in and for the town of Lake View, and to hold the same office which was held by Moritz Kaufman on June 1, 1895;* that said recommendation was certified to the Governor by said judges; that subsequently said Governor nomi- nated said Henry Bonnefoi to succeed himself as justice of the peace, and to hold said office held by Moritz Kauf- man on the first day of June, A. D. 1895, and transmitted the said nomination to the Senate of Illinois for confir- mation; that subsequently to said nomination the secre- tary of said Senate notified the Governor that said Senate had confirmed the name of said Henry Bonnefoi, as made by the Governor; that subsequently, on April 24, 1899, said Bonnefoi took the oath of office as such justice of the peace and received from the Governor of the State of Illinois his commission; that said commission was duly recorded in the office of the county clerk of Cook county on the 24th day of April, 1899; that said Bonnefoi took the oath of office as such justice of the peace and complied with all things requisite to the holding of said office, and from thenceforward has continued, and still continues, to hold the said office; that notwithstanding the appointment of said Henry Bonnefoi to succeed him- self and to hold said office which was held by said Moritz Kaufman as such justice on June 1, 1895, said Kaufman

still holds and executes, without any warrant whatsoever, the office of said justice, of the peace of the town of Lake View, as aforesaid, and thus usurps the rights and privileges of said office, to the damage of said People," etc.

There was a prayer for answer; demurrer by respondent; demurrer overruled, and judgment for the People.

ADOLPH MOSES, for appellant:

The judges of the several courts of Cook county who have assumed the right to designate the successorship of Justice Kaufman act only in a ministerial or political capacity, and they have no warrant, in law, to appoint a successor. The constitution commands them only to recommend, and the statute has not attempted to enlarge this authority. Const. art. 6, sec. 28; Acts of 1871, 1895, 1899; *Morgan* v. *People*, 90 Ill. 558.

Justices of the peace hold their offices for four years and until their successors have been commissioned and qualified. Const. art. 6, sec. 28; *Soucy* v. *People*, 115 Ill. 109.

Even if it were conceded that the judges possess the power to recommend a successor, they have no power to dispose of the office of some other justice at the same time. The power to recommend a successor, once exercised, is exhausted.

The judges of Cook county, in acting under section 28 of article 6 of the constitution, and the statutes made conformable to it, do not act in a judicial capacity but only in a ministerial or political capacity, and hence they cannot exercise any implied powers whatsoever, except as explained in *Field* v. *People*, 2 Scam. 79.

The judges had no power, after recommending a justice "to succeed himself," also to make disposition of the office of another justice of the peace. The latter involves a question of law, which can only be decided after a hearing and in a proper legal proceeding.

Under the constitution of Illinois, justices of the peace form a part of the judicial department of the State, and

such an officer is a good officer, although, unrecommended, he may hold office until there is a legally appointed successor. Const. art. 6, sec. 1.

The case of *People* v. *O'Toole*, 164 Ill. 344, does not control the question whether the judges of Cook county have the right to recommend a successor, and even if it did, the contention is maintained herein that that part of the decision ought to be overruled. The recommendation of a successorship by the judges, and the act of the Governor in adopting and of the Senate in confirming the successorship, are one and all acts without warrant of law, because not authorized by any statute, and they do not exist as an implied power.

CHARLES S. DENEEN, State's Attorney, and F. L. BARNETT, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The superior court overruled appellant's (Kaufman's) demurrer to the information, and rendered judgment of ouster against him and for a fine of $100 and costs of suit. The Appellate Court has affirmed the judgment, and Kaufman took his further appeal to this court.

The case differs somewhat from *People* v. *O'Toole*, 164 Ill. 344, but it must be governed by the principles there announced. Kaufman has held over from 1895 without appointment, and claims the right to continue to hold the office of justice of the peace, because, as he says, no successor to him has been appointed. In the *O'Toole case* we held that the office held by each justice of the peace was distinct from every other, and that the power and duty of the judges to recommend fit and proper persons for appointment to such office included the designation of the particular office, and that the Governor had no power to change the designation as to successorship made by the judges; that he could only appoint as recommended, or reject. Appellant contends, in an elaborate

and able argument, that the views we there expressed are erroneous and should be recalled. We have fully considered all that has been said on the subject and see no reason to depart from the conclusion reached and announced in that case, where the question was carefully considered after exhaustive arguments, both oral and written.

It follows, that when Bonnefoi was recommended to the Governor by the judges of Cook county, in 1895, to succeed Kaufman, the Governor had no power to make the change attempted and to appoint him to an office for which he was not recommended. In the *O'Toole case* we held that it took the three agencies of government,—the judges to recommend, the Governor to appoint and the Senate to confirm,—to constitute, in the manner provided by law, a justice of the peace in the city of Chicago, and that all these agencies must join in the manner provided by the constitution. It is to be observed that the judges recommended Bonnefoi, in 1895, to succeed himself, but that the Governor sent his name to the Senate as one appointed to succeed one Sampson, another justice of the peace of said town, and the Senate confirmed the appointment and Bonnefoi was commissioned a justice of the peace of the town of Lake View. Kaufman continued to act as a justice holding over until his successor should be appointed. Four years later, in 1899, the judges, in their recommendations to the Governor for appointment, recommended Bonnefoi *to succeed himself and to hold the office held by Kaufman on the first day of June, 1895,* and he was so appointed by the Governor and confirmed by the Senate, and was commissioned as a justice of the peace of the town of Lake View by the Governor. Of course, if it be true, as contended, that the judges' power was exhausted when they recommended to the Governor five fit and competent persons for appointment as justices of the peace of the town of Lake View, and that they could not designate or recommend any one to any particular

successorship, then the recommendation of Bonnefoi to succeed Kaufman amounted to nothing more than a recommendation that he be appointed one of such justices, and the designation of successorship might have been properly wholly disregarded. But we think the law is otherwise, and, as before said, it was so held in *People* v. *O'Toole, supra.*

It is, however, contended by counsel for Kaufman, that even if the *O'Toole case* be applicable to the case at bar, the effect of the recommendation of Bonnefoi in 1899 was to make him his own successor, only, and not the successor of Kaufman, and that therefore Kaufman is still "a good justice" and cannot be ousted in this proceeding. The contention is that the judges had no power to make a double designation, and to recommend Bonnefoi not only to succeed himself but to hold the office of Kaufman, when they, Bonnefoi and Kaufman, had both been acting as justices of the peace for the preceding four years; that the powers of the judges were exhausted when they recommended him to be his own successor, and that the further recommendation that he be appointed to hold the office held by Kaufman in 1895 was unauthorized and void. This reasoning is more plausible than sound, and implies that in 1899 Bonnefoi and Kaufman lawfully held two of the five distinct and separate, lawfully created, offices of justice of the peace of the town of Lake View, and that the judges recommended Bonnefoi as a fit and competent person to fill both of them. It must be presumed that the judges, the Governor and Senate, all of whom united in using this alleged double designation in the appointment, intended to appoint Bonnefoi to one office only, and that one a lawfully created office. Doubt was cast upon the title of Bonnefoi in his appointment in 1895 because of the change in the designation of successorship made by the Governor, and also, as well, upon the title of Kaufman as a hold-over justice after that date. But there was no doubt that Kaufman was both a

*de facto* and a *de jure* officer on the first day of June, 1895, and it was clearly the intention to appoint Bonnefoi to that office, and thus supersede Kaufman and end the confusion which had arisen in these offices. That was the office to which Bonnefoi was recommended in 1895, and, whether duly appointed to it or not, he had acted as a justice and doubtless kept a record of his acts as provided by law, and if the appointing power regarded him as having been lawfully appointed as Kaufman's successor in 1895 notwithstanding the change made by the Governor, and therefore considered that in re-appointing him to the same office he would be his own successor and entitled to retain his records, the use of that part of the designation "to succeed himself" would be explained. At all events, in view of all of the circumstances there is no uncertainty in the meaning of the designation in the recommendation and appointment of Bonnefoi, in 1899, to succeed himself and to hold the same office held by Moritz Kaufman on June 1, 1895. Nor was it an attempt to appoint him to two offices. If, in fact or law, the office of justice, as Bonnefoi's successor, and the office held by Kaufman in June, 1895, were two distinct offices, still the special designation of the office as the one so held by Kaufman in June, 1895, must control the more general one of successorship. The terms used by the judges, the Governor and the Senate in making the appointment, when considered in the light of the circumstances surrounding them at the time, leave it sufficiently certain that Bonnefoi was appointed to fill the office held by Kaufman on the first day of June, 1895, and that is the only question that can concern appellant in this case, it being immaterial to him here whether Bonnefoi was lawfully appointed in 1895 or not.

The judgment of the Appellate Court will be affirmed

*Judgment affirmed.*